IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CASSANDRA YVETTE WILLIAMS | |
| Plaintiff, | |
| V. | CIVIL ACTION NO. H-09-3456 |
| MICHAEL J. ASTRUE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 10), Defendant's cross Motion for Summary Judgment (Document No. 12), and Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 13).[1] After considering the cross motions for summary judgment, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, that Plaintiff's Motion for Summary Judgment is DENIED, and that the decision of the Commissioner of the Social Security Administration is AFFIRMED.

---

1   The parties consented to proceed before the undersigned Magistrate Judge on May 20, 2010. (Document No. 11).

I.  **Introduction**

Plaintiff Cassandra Yvette Williams brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Act. *See* 20 C.F.R. §§ 404, 416. Williams contends that the Administrative Law Judge ("ALJ") failed to properly consider the opinion of Dr. Anthony J. Lamarra, her treating physician, and also that the ALJ's decision is not supported by substantial evidence.

First, Williams argues that the ALJ failed to properly consider Dr. Lamarra's report in which he advised that Williams should perform "sedentary duties . . . only" and "can go back to sedentary duty only in a sit down job." (Tr. 255, 252). According to Williams, the ALJ was required to properly analyze the above evaluation by Dr. Lamarra under the criteria found at section 404.1527(d), the ALJ committed an error of law by not doing so, and thus this Court must reverse and remand the final decision of the Commissioner for reconsideration. *See* 20 C.F.R. 404.1527(d) ("If . . . a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Second, Williams argues that the ALJ's finding that she retains the ability to perform her past relevant work is not supported by substantial evidence because the ALJ, while questioning the vocational expert regarding Williams' residual functional capacity, did not incorporate all Williams'

3

limitations. According to Williams, the failures of the ALJ during questioning included the following: the ALJ found that Williams' residual functional capacity required her to "have short but frequent restroom breaks, at least 2 an hour in addition to her normal morning, noon and afternoon breaks," but the ALJ posed a hypothetical question regarding the need to take "frequent, short bathroom breaks" of two per hour, with those two breaks *including* her normal morning, noon and afternoon breaks; the ALJ failed to define the meaning of "short" when questioning the vocational expert regarding the bathroom breaks; and the ALJ did not specifically define how long Williams can stand or walk at one time without the need to sit and rest. Therefore, according to Williams, the final decision of the Commissioner is not supported by substantial evidence.

The Commissioner responds that no error of law was committed because the ALJ did not ignore Dr. Lamarra's medical opinion but properly considered all medical reports presented by Williams, including those completed by Dr. Lamarra. Furthermore, the Commissioner argues that Dr. Lamarra's statements regarding Williams' ability to only work in sedentary positions did not consist of a medical opinion by a treating physician; the Commissioner argues that such statements were instead an "an administrative finding on [disability] specifically reserved to the Commissioner." As to Williams' second argument, the Commissioner responds that there is substantial evidence to support the finding by the ALJ. According to the Commissioner, any discrepancy between the ALJ's assessment of Williams' residual functional capacity and his hypothetical questions to the vocational expert is a discrepancy based on semantics. The Commissioner argues that "the ALJ clearly indicated, in both the decision and the hypothetical question, that Williams required two breaks per hour throughout the day." Additionally, the Commissioner argues that Williams has failed to provide objective evidence to support her subjective claim as to her ability to stand or work for certain durations.

4

## II. Administrative Proceedings

Williams filed applications for disability insurance benefits and supplemental security income benefits on May 2, 2007, claiming that she became disabled on March 5, 2007, due to a torn ligament in her left ankle and plantar fasciitis on her left foot. (Tr. 115–24, 125–27). After her applications were denied at the first two levels of administrative review, Williams requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 93–94). The request was granted, and a hearing was held on October 21, 2008. (Tr. 99). Williams, represented by an attorney, appeared and testified. A vocational expert also appeared and testified.

On November 4, 2008, the ALJ issued a decision in which he found that Williams was not disabled within the meaning of the Social Security Act. (Tr. 10–18). In his decision, the ALJ analyzed Williams' applications pursuant to the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4). Williams filed a request for review by the Appeals Council of the ALJ's decision. (Tr. 5). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. §§ 404.970. After considering Williams' contentions, in light of the applicable regulations and evidence, the Appeals Council concluded on March 17, 2009, that there was no basis upon which to consider Williams' request for review. (Tr. 1). The ALJ's findings and decisions then became final. (Tr. 1). Pursuant to 42 U.S.C. § 405(g), Williams timely filed a complaint, seeking judicial review of the Commissioner's final decision.

## III. Standard of Review of Agency Decision

Judicial review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

5

decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Additionally, section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Pursuant to the Act, a reviewing court has the power to enter judgment upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" only when the Commissioner's decision is not supported by substantial evidence. *Id.* While a court must examine the record in its entirety in determining whether substantial evidence supports the decision, the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner's] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988 ); *see Jones*, 174 F.3d at 693. Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). Ultimately, if the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm the Commissioner's decision. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Greenspan v. Shahala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been described as "more than a mere scintilla, and less than a preponderance." *Spellman v. Shahala*, 1 F.3d 357, 360 (5th Cir. 1993). Thus, substantial evidence exists when it creates more than "a suspicion of the existence of the fact to be established." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). However, "'no substantial evidence' will be found only when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [He] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. *Anthony*, 954 F.2d at 293. Rather, a claimant is disabled only if he is "incapable of engaging in *any* substantial gainful activity." *Id.* (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual

7

functional capacity, he will be found disabled.

*Id.* Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If the claimant is successful, the burden shifts to the Commissioner at step five, and the Commissioner must show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to rebut this finding. *Selders*, 914 F.2d at 618 (5th Cir. 1990). If the Commissioner determines at any step in the process that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d 558, 564 (5th Cir. 1994).

## V. Discussion

In his decision, the ALJ followed the five-step inquiry as outlined in the regulations. At the first step, he found that Williams had not engaged in substantial gainful activity since March 5, 2007, the alleged onset date. (Tr. 13). The ALJ then considered the second step of the inquiry and determined that Williams had the following severe impairments: obesity, left foot/ankle pain, right knee pain and edema. *Id.* At step three, the ALJ determined that Williams' impairments or combination of impairments did not meet or medically equal any of the Listings of Impairments. 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1525, 404.1526, 416.925 and 416.926). (Tr. 14). The ALJ then took careful consideration of the entire record at step four. He examined Williams' medical records, as well as her testimony at the hearing and determined that Williams possessed the following residual functional capacity:

> [She can] "lift and carry 20 pounds occasionally and 10 pounds frequently, but can only stand/walk for a total of 2 hours in a normal workday with normal breaks; and can only sit for a total of 6 hours in a normal workday with normal breaks; she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance; she must elevate [her] left foot 12 inches high for at least 3 hours out [of] an 8-hour workday; and she must have short but frequent restroom breaks, at least 2 an hour in addition to her normal morning, noon and afternoon breaks."

(Tr. 14). Based on the determination of Williams' residual functioning capacity and the testimony

provided by a vocational expert, the ALJ concluded that Williams was capable of performing her past relevant work as an interviewing clerk, an office manager, and a customer service representative. (Tr. 15). Thus, the ALJ found at step four that Williams was "not disabled" as the definition applies to benefits for disability insurance and supplemental security.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

*A. Objective Medical Evidence*

The objective medical evidence shows that Williams suffers from plantar fasciitis of the left foot, a torn anterior talofibular of the left ankle, edema, and obesity. The record shows that Williams first sought medical treatment from her primary care physician on March 5, 2007, after injuring her left foot and ankle on March 2, 2007. (Tr. 257). Williams reported that her primary care physician advised her to take medication, ice the left foot and ankle, and elevate the foot. (Tr. 28). On March 7, 2007, radiographs were taken of Williams' left foot, and the reviewing physician, Dr. John Lee, noted the following:

> IMPRESSION:
> Frontal and lateral projections of the left foot show no focal osseous or alignment defect. There is prominent soft tissue swelling plantar to the calcaneus. Small plantar calcaneal enthesophyte is also noted.

(Tr. 242). Later, on March 16, 2007, Williams underwent an MRI scan at Bellaire Diagnostic Imaging, and Dr. Lee determined that the images revealed a "focal partial tear of the subjacent plantar fascia," and noted that the "anterior talofibular ligament is lax and irregular, consistent with tear." (Tr. 241). On April 5, 2007, Williams sought medical advice for her foot and ankle from Dr.

9

Jason Schell of the Houston Spine & Rehabilitation Center. (Tr. 247). During that first visit, Dr. Schell referred Williams to Dr. Anthony J. Lamarra, a podiatrist. (Tr. 249). The objective medical evidence in the record shows that Williams saw Dr. Schell on two follow-up visits during the month of April. (Tr. 244, 246).

Dr. Lamarra first treated Williams on April 16, 2007. (Tr. 258). At the April 16 visit, Dr. Lamarra noted that Williams had been diagnosed with a "partial tear of the talofibular ligament" and and that she had undergone physical therapy but the therapy worsened the pain. *Id.* Dr. Lamarra treated Williams' "foot sprain" and plantar fasciitis by injecting her heel with "a combination of Marcaine, Lidocaine, Decadron[.]" (Tr. 259). Dr. Lamarra recommended that Williams "follow-up" with Dr. Schell for physical therapy with the goal that a combination of therapies, including injection therapy, physical therapy and supportive devices, would alleviate Williams' pain. (Tr. 260). According to Dr. Lamarra's instructions, Williams was to undergo physical therapy three times a week for a period of four to six weeks. (Tr. 261). Williams returned to Dr. Lamarra on April 23, 2007, for continuing care. (Tr. 256). The medical records from the April 23 visit show that Williams still complained of pain, had not begun physical therapy with Dr. Schell, and underwent another injection in her foot for pain relief. (Tr. 256). Dr. Lamarra also prescribed pain medication and advised Williams to begin physical therapy with Dr. Schell and to return to his office within one week for further instruction. (Tr. 256). On May 8, 2007, Williams again went to Dr. Lamarra's office for treatment. (Tr. 253). At the May 8 visit, Dr. Lamarra noted in his medical records that Williams "does have plantar fasciitis," and she "does have pain upon palpation in the medial band of the plantar fascia consistent with plantar fasciitis left side." Furthermore, the medical records show that Williams stated at that time that she had not had any relief from the prior injections. Dr. Lamarra dispensed neuropathic cream to be rubbed into Williams' foot three to four times daily and believed

that tennis shoes and crutches were sufficient for Williams to get around. (Tr. 253–54). The last visit with Dr. Lamarra to be included in the record occurred on June 11, 2007. At the June 11 visit, Dr. Lamarra administered another injection, referred Williams to Dr. Schell for electrical studies to rule out radiculitis/tarsal tunnel syndrome on her left side, and noted in the medical records that Williams "can go back to sedentary duty only in a sit down job [because] [a]nything more than that will cause reaggravation of her work related injuries." (Tr. 251–52).

In addition to the medical reports on file, the objective medical evidence presented at the hearing showed that Williams is severely obese, has right knee effusion, and requires restroom breaks two to three times an hour because a side effect of her medication is frequent urination.

Upon this record, the objective medical evidence supports the ALJ's conclusion that Williams has the following severe impairments: obesity, left foot/ankle pain, right knee pain, and edema. However, the objective medical evidence also supports the ALJ's determination that Williams' impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). The objective medical evidence factor therefore weighs in favor of the ALJ's decision.

### B.   *Diagnosis and Expert Opinions*

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability.").

11

In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Furthermore, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

In this case, the record contains the medical opinions from doctors Z. Charania, John Lee, Jason Schell, and Anthony Lamarra. All the doctors who treated Williams concluded that she suffers from plantar fasciitis and a torn ligament. The only doctor whose opinion Williams alleges was not properly considered by the ALJ is Dr. Lamarra's. Specifically, Williams claims that Dr. Lamarra's opinion regarding Williams' ability to work without "reaggravating her work-related injury" was not properly considered by the ALJ. Dr. Lamarra's reports were issued in April and May of 2007. The hearing before the ALJ was conducted in October 2008. At that hearing, Williams presented no additional objective medical evidence to corroborate Dr. Lamarra's medical opinion. Furthermore, even though Dr. Lamarra was Williams' treating physician, it was not within his province to determine whether Williams was "disabled" as defined by the Act. Ultimately, only the Commissioner may do so. *See* 20 C.F.R. § 404.1527(e). Williams claims that the ALJ did not properly consider the opinion of Dr. Lamarra because he did not specifically discuss Dr. Lamarra's medical opinion in his finding. However, the ALJ did "review . . . the *entire* medical evidence of record" and the medical evidence of record contained Dr. Lamarra's reports. The ALJ was not required to accept Dr. Lamarra's opinion regarding Williams' ability to work as controlling because

such an opinion is not considered a medical opinion under the Act. Moreover, Dr. Lamarra's opinion that Williams should be limited to "sedentary" work was not supported by any objective findings as to Williams' functional limitations, and there is nothing in the record to suggest that Dr. Lamarra's use of the term "sedentary" was consistent with the definition of sedentary work in the regulations. As such, Dr. Lamarra's opinion was not one that was subject to any deference.

    C.    *Subjective Evidence of Pain and Disability*

The third element considered is the subjective evidence of pain and disability, including the claimant's testimony and corroboration by family and friends. Not all pain and subjective symptoms are disabling. *Cook v. Heckler,* 750 F.2d 391, 393. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence in the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the Social Security Act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selder,* 914 F.2d at 618–19 (internal citations omitted). In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

At the administrative hearing on October 21, 2008, Williams testified her primary medical complaint is pain in her left foot and ankle. She stated that, while working in her last position as an interviewing clerk, she felt a sudden pain in her left foot and this pain caused her to walk with a

13

limp. Upon the advice of her primary care physician, Williams stopped working when the pain did not subside after treatment. Williams testified that she has been diagnosed with plantar fasciitis of the left foot and a torn anterior ligament of the left ankle. Williams also testified that these conditions cause her a great deal of pain when she stands or walks for an extended period of time; that she has undergone a series of injections and therapy for the condition but has not had any relief; that she was advised to undergo an operation but cannot afford to do so; and that the condition in her left foot forces her to carry more weight on her right side, resulting in a right knee effusion. Williams testified that her medical condition causes significant pain and this pain precludes her from standing more than ten minutes without pain in both legs and her left foot, or from sitting more than two hours. She stated that when the pain occurs, she must elevate her legs twelve inches from the ground and that she does elevate her left leg twelve inches from the ground as much as three hours per day. Furthermore, Williams testified that she suffers side effects from medications that she takes on a daily basis. These side effects include drowsiness and frequent urination, with restroom breaks as often as two to three times an hour.

In her testimony at the hearing, Williams also stated that she spends two to three hours per day on classwork for her online degree, has a valid driver's license and drives daily, and cares for her eight-year old son and 23-month old grandson. She stated that she performs housework, including cooking, cleaning, and laundry, and that she shops for the household two to three times a month. Williams also testified that she sometimes visits the pastor of her church and sometimes attends functions at her son's school.

The ALJ found that some of Williams' complaints and subjective symptoms were credible but exaggerated. In doing so, the ALJ wrote:

Considering the evidence as a whole, the Administrative Law Judge concludes that the

14

claimant may experience some of the subjective symptoms to which she alleges but not to the degree alleged. The claimant's testimony is an overstatement of her subjective symptoms and functional limitations and is only generally credible. As stated above, the claimant testified that she is in constant pain, however her own testimony of her activities of daily living are inconsistent with her allegations. She testified that she cares for an 8-year old son and 23 month old grandson. She performs household chores, that include cleaning, laundry, cooking and shopping. She drives her son to school and her grandson to daycare. In addition, the claimant takes two online college courses. The claimant has failed to document her record with evidence that would support her claim of a disabling condition. There is no objective medical evidence in the record to substantiate the claimant's allegations that she is unable to do any work. Additionally, none of his physicians have set out any limitations in their records, which would preclude the performance of the residual functional capacity, as determined by the Administrative Law Judge.

(Tr. 15). Credibility determinations, such as the above determination by the ALJ in regards to Williams' subjective complaints, are generally within the province of the ALJ to make. *See Greenspan*, 38 F.3d at 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record supports the ALJ's credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

*D. Education, Work History, and Age*

The fourth element considered is the claimant's educational background, work history, and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but considering his age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record shows that Williams was born on October 14, 1968, and was 40 years old at the time of the hearing before the ALJ. (Tr. 22). At the hearing, Williams testified that she completed

high school, was previously licensed as a certified nursing assistant, and has completed 24 credit hours towards a Bachelor's degree in Human Service Management. (Tr. 22–23, 27). Her past relevant work experience includes employment as an interviewing clerk, an office manager, and a customer service representative. (Tr. 51–52). In her most recent position, Williams worked as an interviewing clerk at a state agency, earning a monthly salary of $2086 per month. (Tr. 36, 51). At the time of the hearing, she had not worked since May 2007.

At the hearing, the ALJ questioned Kay Gilreath, a vocational expert ("VE") about Williams' ability to perform her past relevant work and her ability to engage in other gainful employment. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.*

Here, both the ALJ and Walker's attorney questioned the vocational expert. The record shows that the ALJ posed the following hypothetical questions to the vocational expert:

> Q: [H]ypothetically then I want you to assume we have an individual of the same age, education, and past work experience as this claimant. But I'd like you to further assume that this individual – well, the exertional levels are going to be kind of a combination sedentary

16

and light. Let me give it to your [sic] more specifically. That the person can occasionally lift and carry 20 pounds and frequently 10. But the person can only stand and walk two hours in a normal workday with normal breaks. Could sit for up six hours. This person can never climb ladders, ropes, or scaffolding. But could occasionally, as that term is used in the Dictionary of Occupational Titles, can occasionally climb ramps and stairs. Could occasionally do activities involving balance. Now with those qualifications and/or abilities, in your opinion, would that hypothetical person be able to perform any of the claimant's past relevant work?

A: The past jobs which were sedentary would fall within that. The light job requires more standing.

Q: Okay. And, as I understand it, then that would be the –

A: Office manager –

Q: – yeah, interviewing –

A: – interviewing clerk –

Q: – clerk, office manager, and –

A: – customer service –

Q: – customer service –

A: Right.

Q: – representative. Those three, right?

A: Yes.

Q: Now as a second hypothetical, this time I want to add to the first hypothetical, and I'd like you to add the following limitations. That this individual must elevate their – her foot, and that would be . . . her left foot, at least 12 inches high for at least 3 hours during the workday. Okay. And that this individual has to have frequent breaks, bathroom breaks, short bathroom breaks, but frequent, and I will tell you at least two per hour throughout the entire workday. And that would be two per hour and in that number you could count the normal breaks a person would have. So that they would have the normal morning break, for instance, and then the noon break for lunch, and then afternoon break. But throughout the entire day they'd have to have at least two breaks per hour. Now given those considerations, in your opinion, would there be any jobs in the regional or national economy for such a person?

A: It [sic] they're short bathroom breaks clerical positions can usually accommodate those.

. . .

And also, the elevating the foot to 12 inches is still allowing someone to be in a seating, sitting position. So I would say that the past sedentary work would still fall within that.

Q: Would, and that would be the three jobs we talked about earlier –

A: Yes.

Q: – her past relevant work? All right.

A: I mean, let me clarify that. If someone is staying in the bathroom five minutes –

Q: Right.

A: – each time and they're doing that twice a day that wouldn't – if they're going in one, two minutes –

Q: One, two minutes twice an hour or twice a day?

A: Twice an hour. In a clerical job that's –

Q: All right. [sic]

A: – usually tolerated.

Q: Now if a person – well, let me make it hypothetical number three. Assume for this hypothetical that the individual could lift and carry 20 pounds occasionally and 10 pounds frequently. That this individual can only be on their feet a total of one hour per workday. The remaining time of the workday this person would have to be in a position where they could rest. All of the rest of the qualifications that I gave you in the second hypothetical would be the same as far as elevating their legs, and bathroom breaks, and the postural limitations. Now given those considerations, in your opinion, would that person be able to do any of the claimant's past work?

A: No, that would reduce someone to below full time –

Q: Full time positions?

A: Yes.

(Tr. 53–56). Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert,

18

which incorporated all the impairments the ALJ found supported by the record. To the extent that Williams alleges that the ALJ erred by "not includ[ing] all limitations included the ALJ's finding," Williams claims that the residual functioning capacity as determined by the ALJ requires that she have "approximately three bathroom breaks per hour" because the finding states that Williams needed "short but frequent restroom breaks, at least two an hour in addition to her normal morning noon and afternoon breaks." (Tr. 14). Williams further claims the ALJ did not incorporate such a limitation in his hypothetical question to the ALJ because he inquired about Williams' need to have "at least two breaks per hour." (Tr. 54). Additionally, Williams claims that the ALJ erred by not defining the term "short" when referring to the duration of the restroom breaks and limiting Williams' ability to stand for a total of two hours.

  First, the language of the ALJ's determination does not support Williams' contention that he found she required three bathroom breaks per hour. While it is true that the ALJ did not use the exact same terminology in his determination as in the hypothetical question to the vocational expert, the meaning was the same. In short, the ALJ questioned the vocational expert regarding the need to take "at least two [breaks] per hour throughout the entire workday," allowing two minutes per break, and found that Williams was limited to take "at least [two breaks] an hour." Second, Williams' attorney was present at the hearing and also posed hypothetical questions to the vocational expert. Williams, through her attorney, did not take the opportunity to correct any deficiency in the ALJ's hypothetical questions regarding the duration of the bathroom breaks. Third, as to Williams' claim that the ALJ erred by finding she has the residual functioning capacity to stand at least two hours a day, Williams has offered no objective medical evidence to support the subjective claim that she must rest two to three hours per day during a normal eight hour workday. (Tr. 56).

  In short, the ALJ's hypothetical questions were based on the ALJ's assessment of Williams'

residual functional capacity, an assessment which is supported by substantial evidence. Therefore, the vocational expert's testimony, as well as Williams' education and work history, also supports the ALJ's decision.

## VI. Conclusion and Recommendation

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, as the ALJ used the correct legal standards, and as there is substantial evidence to support the ALJ's decision, the Magistrate Judge

ORDERS that Defendant's Motion for Summary Judgment (Document No. 12) is GRANTED, the Plaintiff's Motion for Summary Judgment (Document No. 10) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 27th day of July, 2010.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE